## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **LINDA MCCALEB, as administrator of the estate of DENNIS MCCALEB, decedent.** | **Civil Action No. _____** |
| **Plaintiff,** | |
| **v.** | |
| **NURSE ASSIST, LLC, MEDLINE INDUSTRIES, LP, and MCKESSON MEDICAL-SURGICAL INC.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff, Linda McCaleb ("Plaintiff"), individually and as Executrix of the Estate of Dennis McCaleb, by and through her undersigned counsel, files this Complaint against Defendants, Nurse Assist, LLC, Medline Industries, LP, and McKesson Medical-Surgical Inc. ("Defendants"), and in support thereof states the following:

## NATURE OF THE ACTION

1.    This action arises out of Decedent's use of Sterile 0.9% Normal Saline USP products (hereinafter, the "Product" and/or "SteriCare") that were manufactured, imported, sold, marketed, labeled, distributed, and financially controlled by Defendants.

2.    Due to Defendants' negligent, reckless and/or intentional misconduct, consumers, like Plaintiff, used Defendants' Product, which was widely recalled on or about November 6, 2023 due to a "potential contamination."[1]

3.    In the voluntary recall, Defendants admitted that "[i]n populations most at risk, such

---

[1]    https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/nurse-assist-llc-issues-recall-09-sodium-chloride-irrigation-usp-and-sterile-water-irrigation-usp (last accessed November 4, 2025).

as patients who are immunocompromised, there is a possibility the use of the affected product could potentially result in severe of life-threatening adverse events."[2]

4.      As a result of Decedent's use of Defendants' Product, Decedent developed sepsis which ultimately led to his death.

5.      Decedent and Decedent's family suffered economic damages due to Defendants' misconduct.

6.      Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief.

7.      Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## THE PARTIES

### Plaintiff

8.      Decedent, Dennis McCaleb, was at all times relevant hereto a citizen and resident of Fayette, Alabama.

9.      Plaintiff, Linda McCaleb, is and at all times relevant hereto has been a citizen and resident of Fayette, Alabama.

10.     Plaintiff, Linda McCaleb, is the widower of Dennis McCaleb and appointed Administrator of Decedent's estate.

### Defendants

11.     Defendant, Nurse Assist, LLC ("Nurse Assist") is, and at all times relevant to this action was, a Delaware Limited Liability Company with its principal place of business located at 4409 Haltom Road, Haltom City, Texas 76117.  Nurse Assist designs, manufacturers, markets,

---

[2] *Id.*

advertises, labels, distributes, packages, imports, supplies, and sells the Product at issue in this litigation.

12.     Defendant, Medline is, and all times relevant to this action was, an Illinois Company with its principal place of business located at Three Lakes Drive, Winnetka, Illinois 60093. Medline designs, manufactures, markets, advertises, labels, distributes, packages, imports, supplies, and/or sells the Product at issue in this litigation.

13.     Defendant, McKesson, is and all times relevant to this action was, a Virginia Corporation with its principal place of business located at 9954 Mayland Drive, Suite 4000, Henrico, Virginia 23233. McKesson designs, manufactures, markets, advertises, labels, distributes, packages, imports, supplies, and/or sells the Product at issue in this litigation.

14.     Prior to the date that Decedent used the Product, Defendants possessed technical, medical, and/or scientific data from which Defendants knew or should have known through the exercise of reasonable diligence that the Product was or could be contaminated and was thereby hazardous to the life, health, and safety of persons, such as Decedent, who were exposed to the Product.

15.     At all pertinent times, Defendants, Nurse Assist, Medline, and McKesson, were engaged in the research, development, manufacture, design, testing, packaging, labeling, sale, and marketing of the Product throughout the United States and within the State of Alabama.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, and Plaintiff and Defendants are residents of different states.

17.     At all relevant times, Defendants, individually and/or collectively, manufactured,

designed, marketed, labeled, distributed, promoted, sold, and/or financially controlled the Product at issue in this litigation, which was contaminated and voluntarily recalled on or about November 6, 2023, to Alabama consumers like Plaintiff.

18.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves in Alabama and have engaged in significant, continuous, and systemic business activities and targeted contacts with the State of Alabama. Further, Defendants regularly conduct business in the State of Alabama relating to the promotion, marketing, distribution, sale, and/or financial control of the Product.  As such, jurisdiction over Defendants would not offend due process or traditional notions of fair play and substantial justice.

19.     This Court has specific personal jurisdiction over the Defendants because Plaintiff's cause of action arose directly out of Defendants' contacts with Alabama, i.e. the marketing, sale, distribution, and financial control of the contaminated Product to Decedent and his medical providers in Alabama, which caused his injuries in Alabama.

20.     At all material times hereto, Defendants had sufficient minimum contacts with Alabama because Defendants purposefully marketed, sold, distributed, and financially controlled the Product in Alabama, which led to Decedent's injuries.  These contacts were not due to any unilateral activities of Decedent.

21.     This Court also has specific personal jurisdiction over the Defendants due to the Product-specific business activities, including but not limited to the promotion, marketing, sale, distribution, and financial control of the adulterated and contaminated Product, which took place in the State of Alabama and caused Decedent's injuries in Alabama.

22.     Defendants are engaged in substantial and not isolated business activities within the State of Alabama.

23.     Given the marketing, sale, and distribution of the Product to individuals and businesses in Alabama, Defendants should reasonably anticipate being haled into court in Alabama.  Defendants' contacts with Alabama were not random, fortuitous, or attenuated.

24.     Upon information and belief, Defendants are subject to jurisdiction within the State of Alabama and this Court because at all relevant times, Defendants committed tortuous acts within the State of Alabama out of which these causes of action arise.

25.     Venue is also proper in this district pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) and 1391(c)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants are subject to this Court's personal jurisdiction. Venue is also proper under 18 U.S.C. § 1965 (a) because Defendants transact substantial business in this district.

26.     Upon information and belief, at all relevant times, Defendants were present and transacted, solicited, and conducted business in the State of Alabama through their employees, agents, and/or sales representatives and derived substantial revenue from such business.

27.     At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States and the State of Alabama.

## FACTUAL ALLEGATIONS

28.     In December 2022, Decedent underwent surgery for a bowel obstruction and hernia and remained in the hospital until May 8, 2023.

29.     Upon discharge from the hospital, Decedent required use of a Foley catheter ("catheter"), ostomy bag, and PICC line.

30.     From May 2023 to January 2024, Plaintiff and Decedent's home health nurses used Defendants' contaminated SteriCare Product to regularly flush Decedent's catheter.

31.    Both Defendants McKesson and Medline supplied the SteriCare Product used to flush Decedent's catheter, which was ultimately recalled on November 6, 2023.

32.    Following the repeated use of the contaminated SteriCare Product, Decedent was repeatedly hospitalized for the remainder of 2023 through January of 2024 due to sepsis.

33.    Additionally, on December 28, 2023, Plaintiff noticed blood in Decedent's catheter bag and contacted Decedent's nurse about the discovery.

34.    The home health nurse noted Decedent was unable to walk or perform activities due to increased pain and blood in the urine.

35.    As a result, Decedent's catheter line was flushed using the SteriCare Product.

36.    Thereafter, Decedent began experiencing symptoms of a Urinary Tract Infection ("UTI") prompting Decedent to present for treatment at an Emergency Room on or about January 9, 2024.

37.    The Emergency Room prescribed oral antibiotics and discharged Decedent the same day.

38.    Despite the oral antibiotics, Decedent failed to recover from his infection and required admission to the Emergency Room on or about January 22, 2024 for treatment of symptomatic anemia and sepsis.

39.    Following discharge from the Emergency Room, on or about January 29, 2024, Plaintiff contacted Decedent's home health providers regarding Decedent's increasing delirium.

40.    Emergency medical services transported Decedent from his home to Fayette Medical Center on or about January 29, 2024 due to Decedent's delirium.

41.    On or about January 30, 2024, labs performed at Fayette Medical Center revealed Decedent's lactate was elevated above his baseline, prompting Decedent to be subsequently

transferred to Grandview Medical Center for higher level care with a diagnoses of pancytopenia and septic shock.

42.    Decedent passed away from his infection at the Grandview Medical Center on February 2, 2024.

43.    Decedent's death certificate reflects his primary cause of death as septic shock.

44.    On or about November 6, 2023, Defendants initiated a voluntary recall of the Product because the Product was nonsterile and potentially contaminated with bacteria.

45.    In the voluntary recall, Defendants admitted that "[i]n populations most at risk, such as patients who are immunocompromised, there is a possibility the use of the affected product could potentially result in severe of life-threatening adverse events."[3]

46.    Decedent could not, by reasonable care, have averted damage and injury from using the contaminated Product, because Decedent, Plaintiff and Plaintiff's health care providers were unaware that the Product was contaminated and/or had been subject to a recall until after it had already been used on Decedent.

47.    As a result of Decedent's use of Defendants' Product, he contracted a serious infection which caused him to develop sepsis and multisystem organ failure, ultimately resulting in his death.

**LIABILITY OF DEFENDANTS UNDER § 6-5-521(a)**

48.    Plaintiff brings a product liability action against Defendants, as that term is defined under § 6-5-521(a).

49.    Defendant, Nurse Assist, LLC, is the manufacturer of the Product and thus liable

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/nurse-assist-llc-issues-recall-09-sodium-chloride-irrigation-usp-and-sterile-water-irrigation-usp#:~:text=for%20Irrigation%20USP-,Company%20Announcement,result%20in%20a%20nonsterile%20product (last accessed November 4, 2025).

to suit under § 6-5-521(a).

50.    Defendant, Medline Industries, LP ("Medline"), is a distributor subject to this product liability action under § 6-5-521(b)(1) because Defendant, Medline, upon reasonable belief, manufactured and/or assembled the Product and such acts are "causally related to the product's defective condition."

51.    Additionally, Defendant, Medline, is a distributor subject to this product liability action under § 6-5-521(b)(2) because Defendant, Medline, upon reasonable belief, "exercised substantial control over the design, testing, manufacture, packaging, or labeling" of the Product and such acts are "causally related to the product's condition."

52.    Defendant, McKesson Medical-Surgical Inc. ("McKesson"), is a distributor subject to this product liability action under § 6-5-521(b)(1) because Defendant, McKesson, upon reasonable belief, manufactured and/or assembled the Product and such acts are "causally related to the product's defective condition."

53.    Additionally, Defendant, McKesson, is a distributor subject to this product liability action under § 6-5-521(b)(2) because Defendant, McKesson, upon reasonable belief, "exercised substantial control over the design, testing, manufacture, packaging, or labeling" of the Product and such acts are "causally related to the product's condition."

## COUNT ONE: NEGLIGENCE
### (Against All Defendants)

54.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

55.    Defendants owed a duty of reasonable care to Decedent and other reasonably foreseeable consumers to not only ensure that the SteriCare Product was safe for intended use, but also that its labeling adequately warned of any and all risks associated with its use.

56.     Defendants also owed a duty of reasonable care to Decedent and other reasonably foreseeable consumers to not market, design, manufacture, produce, supply, sell, and/or distribute unsafe and dangerous products that they knew or should have known through the exercise of reasonable diligence were unsafe and dangerous due to the lack of sterility of the saline fluid.

57.     Defendants breached this duty of care owed to Decedent by failing to ensure that the Product was safe for use, as intended, and was properly tested and stored, as well as placing into the stream of commerce an unsafe and dangerous/adulterated product.

58.     Consequently, it was reasonably foreseeable that Decedent—as a reasonable, foreseeable consumer—would use Defendants' Product and suffer injury from such use due to the lack of sterility and presence of bacteria and/or pathogens.

59.     Decedent's injuries are also directly caused by Defendants' breach of the duty of reasonable care owed to Decedent, as but for Defendants' failure to appropriately warn of the inherent dangers associated with the lack of sterility and potential presence of pathogens within the bottles and/or packaging of the Product, Decedent would not have used it and would not have suffered a serious infection and resulting loss of life.

60.     Defendants' negligence and extreme carelessness includes, but is not limited to:  their marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling, and/or distributing the Product in one or more of the following respects:

     a.  In failing to comply with Current Good Manufacturing Practices to ensure sterility of the Product and as discussed above;

     b.  In failing to manufacture the Product in a sterile environment and packaging to decrease the risk of bacterial growth and/or pathogens entering the Product;

     c.  In failing to warn Decedent of the hazards associated with the use of the Product;

     d.  In failing to properly test their products for microbials, as well as to determine

adequacy and effectiveness or safety measures, if any, prior to releasing the SteriCare Product into the marketplace for consumer use;

e.  In failing to inform product users, such as Decedent, as to the safe and proper methods of handling and using the Product;

f.  In failing to remove the Product from the market when Defendants knew or should have known the Product was defective and/or contaminated;

g.  In failing to instruct the Product user, such as Decedent, as to the methods for reducing the type of exposure to the unsterile saline fluid, which caused a severe infection and exacerbation of infection;

h.  In failing to inform the public in general and Plaintiff, in particular, of the known dangers of using the Product—a supposedly sterile saline fluid;

i.  In marketing and labeling the Product as safe for all uses despite knowledge to the contrary;

j.  In failing to act like a reasonably prudent actor under similar circumstances;

k.  In failing to accurately disclose in its labeling and advertising that the Product was contaminated with a bacterium and/or pathogens.

61.     Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Decedent and constitute gross negligence.

62.     At all pertinent times, Defendants knew or should have known that the Product was unreasonably dangerous and defective (*i.e.*, contaminated) when put to its reasonably anticipated use.

63.     Defendants' acts and/or omissions constitute gross negligence because they constitute a total lack of care and an extreme departure from what a reasonably careful actor would do in the same situation to prevent foreseeable harm to Decedent.

64.     Defendants acted and/or failed to act willfully, and with a conscious and reckless disregard for the rights and interests of Decedent; their acts and omissions had a great probability

of causing significant harm and in fact resulted in such harm to Decedent.  Such conduct warrants the imposition of punitive damages under all applicable legal standards.

65.    Decedent was injured as a direct and proximate result of negligence and/or gross negligence as described herein.

66.    Defendants' negligence and/or gross negligence was a substantial factor in causing and/or contributing to Decedent's harms.

67.    Defendants are liable in tort to Decedent for their wrongful and reckless conduct pursuant to Alabama common and statutory law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, punitive damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

## COUNT TWO: NEGLIGENT FAILURE TO WARN
### (Against All Defendants)

68.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

69.    At all relevant times, Defendants engaged in the design, development, manufacture, marketing, sale, and distribution of the SteriCare Product that was in a defective and unreasonably dangerous condition and was nonetheless marketed and sold to consumers, including Decedent.

70.    Defendants were aware of the fact that their Product was used in a patient population that was already at risk, i.e. patients that required wound care and would suffer greatly from an unsterile, adulterated, and/or contaminated saline fluid.

71.    Defendants knew, or by the exercise of reasonable care should have known, use of the SteriCare Product was dangerous, harmful, and injurious when used by Decedent in a reasonably foreseeable manner.

72.     Defendants knew, or by the exercise of reasonable care, should have known that ordinary consumers, such as Decedent, would not have realized the potential risks and dangers of the SteriCare Product, and that the SteriCare Product was likely to increase the risks of infection and/or exacerbate infection, which renders it unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

73.     Defendants owed a duty to all reasonably foreseeable consumers to disclose the risks associated with the use of the SteriCare Product.

74.     Defendants breached their duty of care by failing to use reasonable care in providing adequate warnings on the SteriCare Product, including that the Product was likely to increase the risks of infection and/or exacerbate infection, which when used in the manner it was intended and to an extent beyond that would be contemplated by the ordinary consumer.

75.     Defendants' failure to adequately warn about their defective Product, and their efforts to misleadingly advertise through conventional avenues, created a danger of injuries that were reasonably foreseeable at the time of design and/or manufacture and distribution.

76.     At all relevant times, Defendants could have provided adequate warnings and instructions to prevent the harms and injuries set forth herein, such as providing full and accurate information about the SteriCare Product in advertising.

77.     A reasonable actor under the same or similar circumstances would have warned and instructed of the dangers associated with an unsterile, adulterated, and contaminated product and the potential presence and contamination of pathogens and/or bacteria.

78.     Upon receiving the SteriCare Product, Decedent and Plaintiff reviewed the Product packaging and labeling, including the instructions for use.

79.     Decedent was injured as a direct and proximate result of Defendants' failure to

warn and instruct, because he would not have used the SteriCare Product had he received adequate warnings and instructions that the Product could increase the risks of severe infection, which renders it unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

80.     Defendants' lack of adequate and sufficient warnings and instructions, and their inadequate and misleading advertising, was a substantial contributing factor in causing harm to Decedent.

81.     As a proximate result of Defendants' design, manufacture, marketing, packaging, labeling, sale, and distribution of the Product, Decedent was injured catastrophically and was caused severe pain, suffering, loss of enjoyment of life, loss of life, and economic damages.

82.     Defendants are liable in tort to Decedent for their wrongful and reckless conduct pursuant to Alabama common and statutory law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

## COUNT THREE: NEGLIGENT DESIGN AND MANUFACTURE DEFECT
### (All Defendants)

83.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

84.     At all relevant times, Defendants engaged in the design, development, manufacture, packaging, labeling, marketing, sale, distribution, and financial control of the SteriCare Product in a defective and unreasonably dangerous condition to consumers, including Decedent.

85.     Defendants caused the SteriCare Product to enter the stream of commerce and to be sold through various retailers, which is how Decedent received it.

86.     The SteriCare Product was expected to, and did, reach consumers, including Decedent, without change in the condition in which it was manufactured and sold by Defendants and/or otherwise released into the stream of commerce.

87.     Decedent used the SteriCare Product in a manner normally intended, recommended, promoted, and marketed by Defendants.

88.     The SteriCare Product failed to perform safely when used by Decedent in a reasonably foreseeable manner, specifically increasing his risk of developing a severe infection.

89.     The propensity to the exposure of bacteria from the unsterile, adulterated, and contaminated saline renders the SteriCare Product unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

90.     Safer alternatives, including sterile, unadulterated, and uncontaminated saline products to prevent contamination with bacteria, exist and have been readily available for decades.

91.     Additionally, Defendants defectively designed the bottle that contained the SteriCare saline fluid, such that it contributed to the contamination and growth of bacteria.

92.     Defendants knew, or by the exercise of reasonable care should have known, that the SteriCare Product was unreasonably dangerous but have continued to design, manufacture, package, label, sell, distribute, market, promote, and supply the Product so as to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm to the consuming public, including Decedent.

93.     Defendants owed a duty to all reasonably foreseeable users to design a safe product.

94.     Defendants breached their duty by failing to use reasonable care in the design and/or manufacturing of the SteriCare Product because it was unreasonably dangerous in that it

increased the risks of severe infection and thus renders the Product unreasonably dangerous when used in the manner it was intended and to an extent beyond what would be contemplated by the ordinary consumer.

95.     Defendants also breached their duty by failing to use reasonable care by failing to use cost-effective, reasonably feasible alternative designs in the design and/or manufacturing of the SteriCare Product.

96.     A reasonable actor under the same or similar circumstances would have designed a safer product.

97.     A reasonable actor under the same or similar circumstances would have not allowed the SteriCare Product to become unsterile, adulterated, and/or contaminated with bacteria.

98.     As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the SteriCare Product, Decedent was injured catastrophically and was caused severe pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, and economic damages.

99.     Defendants are liable in tort to Decedent for their wrongful and reckless conduct pursuant to Alabama common and statutory law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

### COUNT FOUR: NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

100.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

101.     Through their labeling, advertising, and over the course of their regular business,

Defendants, Nurse Assist, Medline, and McKesson, made representations to Decedent and his health care providers concerning the active and inactive ingredients (as well as the alleged uncontaminated nature) in the SteriCare Product.

102.    Defendants intended that the Decedent and his health care providers rely on their representations.

103.    Defendants' representations were material to Decedent's decision to use the Product.

104.    Defendants have a duty to provide accurate information to consumers with respect to the ingredients and/or contaminants identified in the SteriCare Product, as detailed above.

105.    Defendants failed to fulfill their duty to provide accurate information and disclose in the Product labeling and advertising the Product was unsterile, adulterated, and contaminated with bacteria.

106.    Additionally, Defendants have a duty to not make false representations with respect to the Product.

107.    Defendants failed to fulfill their duty or use ordinary care when they made false representations and omissions regarding the quality and safety of the SteriCare Product, as detailed above.

108.    Such failures to disclose on the part of Defendants amounts to negligent omission, and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

109.    Decedent and his health care providers reasonably relied upon such representations and omissions to his detriment.

110.    As a proximate result of Defendants' design, manufacture, marketing, sale,

distribution, and financial control of the SteriCare Product, Decedent was injured catastrophically and was caused severe pain, suffering, loss of life, and economic damages.

111.    Defendants are liable in tort to Decedent for their wrongful and reckless conduct pursuant to Alabama common and statutory law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

## COUNT FIVE: BREACH OF IMPLIED WARRANTY
### (Against All Defendants)

112.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

113.    Because the SteriCare Product is unsterile, adulterated, and contaminated with bacteria, it is not of the same quality as those generally acceptable in the trade and is not fit for the ordinary purposes for which such saline fluid is used.

114.    The SteriCare Product was used on Decedent in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

115.    The SteriCare Product was not altered by Decedent or his health care providers.

116.    Decedent was a foreseeable end user of the SteriCare Product.

117.    The SteriCare Product was used in the manner intended.

118.    As alleged, Defendants' saline fluid was not adequately labeled and did not disclose that it was unsterile, adulterated, and contaminated with bacteria.

119.    The SteriCare Product did not measure up to the promises or facts stated in the marketing, packaging, labeling, advertisement, and communications by and from Defendants.

120.    Defendants impliedly warranted that the SteriCare Product was merchantable, fit,

and safe for ordinary use.

121.    Defendants further impliedly warranted that the SteriCare Product was fit for the particular purposes for which it was intended and sold.

122.    Contrary to these implied warranties, Defendants' saline fluid was defective, unmerchantable, and unfit for its ordinary use when sold and unfit for the particular purpose for which it was sold.

123.    As a proximate result of Defendants' design, manufacture, marketing, sale, distribution, and financial control of the SteriCare Product, Decedent was injured catastrophically and was caused severe pain, suffering, loss of life, and economic damages.

124.    Defendants are liable in tort to Decedent for their wrongful and reckless conduct pursuant to Alabama common law.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

### COUNT SIX: ALABAMA EXTENDED MANUFACTURER'S
### LIABILITY DOCTRINE (AEMLD)
### (All Defendants)

125.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

126.    At all times material to this action, in the course and scope of their business, Defendants were engaged in the sale and/or marketing and/or design, and/or manufacture, and/or distribution of SteriCare Product, including the saline used on Decedent.

127.    Defendants engaged in the design, development, manufacture, marketing, packaging, labeling, sale, distribution, and financial control of the SteriCare Product in a defective

and unreasonably dangerous condition to consumers, including Plaintiff.

128.    Defendants caused the SteriCare Product to enter the stream of commerce and to be sold through various retailers, which is how Decedent received the Product.

129.    The SteriCare Product was expected to, and did, reach consumers, including Decedent and Decedent's health care providers, without change in the condition in which it was manufactured and sold by Defendants and/or otherwise released into the stream of commerce.

130.    Decedent used the SteriCare Product in a manner normally intended, recommended, promoted, and marketed by Defendants.

131.    Defendants knew, or should have known, the SteriCare Product would be used in the way it was used with Decedent.

132.    Defendants violated CGMPs by manufacturing and producing an unsterile saline Product and failed, among other things, to properly test the Product for sterility and contaminants before placing the Product into the stream of commerce for consumers, like Decedent, to use.

133.    The SteriCare Product failed to perform safely when used by Decedent in a reasonably foreseeable manner; that is, the unsterile, adulterated, and contaminated saline fluid rendered the Product unreasonably dangerous and exposed Decedent to a dangerous and deadly bacterium that caused him to suffer and exacerbate a serious infection, which resulted in death.

134.    The SteriCare Product contained a manufacturing defect when it left the possession of Defendants.  Specifically, the SteriCare Product differs from Defendants' intended result or from (possibly) other lots of the same product line because they were unsterile, adulterated, and contaminated, and Defendants failed to properly and adequately test the Product for sterility before distributing it.

135.    Additionally, Defendants defectively designed the bottle that contained the

SteriCare saline fluid, such that it contributed to the contamination and growth of bacteria.

136.    Significantly, the SteriCare Product is a saline fluid that is required to be sterile due to its use in wound care and injection into PICC lines.  Safer alternatives, including sterile, unadulterated, and uncontaminated saline product, exist and have been readily available for decades.

137.    As a proximate result of Defendants' sale of the defective Product, Decedent was injured catastrophically and was caused to endure severe pain, suffering, loss of life, and economic damages.

138.    Defendants are liable under the AEMLD for the injuries sustained by Decedent.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

## COUNT SEVEN: WRONGFUL DEATH AND SURVIVAL ACTION
### (All Defendants)

139.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

140.    Pursuant to Alabama Code § 6-5-410 and § 6-5-410, Plaintiff, as personal representative of Decedent, may maintain an action against Defendants for all economic and noneconomic damages sustained by Decedent and Decedent's beneficiaries.

141.    As a proximate result of Defendants' wrongful acts and/or negligence, Decedent died on February 2, 2024.

142.    This Complaint has been commenced in a jurisdiction where the Decedent could have commenced an action for the alleged wrongful acts, omissions, and negligence had the acts, omissions, and negligence not caused his death.

143.    Defendants are liable in tort to Decedent and Decedent's beneficiaries for their wrongful acts and/or negligence pursuant to Alabama Law, as more fully detailed above.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for compensatory damages, costs of this action, and pre-judgment interest in an amount in excess of seventy-five-thousand dollars ($75,000.00).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and an award of damages against Defendants, as follows:

   a)   special damages, to include past and future medical and incidental expenses, according to proof;
   b)   past and future loss of earnings and/or earning capacity, according to proof;
   c)   past and future general damages, to include pain and suffering, emotional distress and mental anguish, according to proof;
   d)   pre-judgment and post-judgment interest;
   e)   the costs of this action; and
   f)   treble and/or punitive damages to Plaintiff; and
   g)   granting any and all such other and further legal and equitable relief as the Court deems necessary, just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

Dated:  November 6, 2025          */s/ Mitchell Theodore*
                                  Mitchell Theodore (Bar Number: 6549-I00D)
                                  Jon C. Conlin  (Bar Number: 7024-J66C)
                                  **CORY WATSON P.C.**
                                  2131 Magnolia Avenue South
                                  Birmingham, AL 35205
                                  Phone: (205) 328-2200
                                  Fax: (205) 324-7896
                                  mtheodore@corywatson.com
                                  jconlin@corywatson.com

                                  */s/ Michael G. Daly*
                                  Michael G. Daly, Esq. (*pro hac vice* forthcoming)
                                  Joshua M. Neuman, Esq. (*pro hac vice* forthcoming)

**MOTLEY RICE, LLC**
1717 Arch Street, Suite 3610
Philadelphia, Pennsylvania 19103
Phone: (267) 267-4740
Fax: (267) 267-4759
mdaly@motleyrice.com
jneuman@motleyrice.com

*Attorneys for Plaintiff, Linda McCaleb,
individually and as Executrix of the
Estate of Dennis McCaleb*